**GALVESTON COUNTY COMMISSIONERS' COURT, Galveston County Beach Park Board of Trustees and Galveston County, Appellants,**

v.

**Phil LOHEC, et al., Appellees.**

**No. A14–90–0340–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 25, 1991.

Opinion on Motions for Rehearing
Aug. 15, 1991.

Benjamin R. Powel, Kenneth J. Bower, Scott Lyford, Donald S. Glywasky, Galveston, for appellants.

Robert V. Shattuck, Jr., Patrick Reilly, Galveston, for appellees.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

Galveston County Auditor Phil Lohec, appellee, sought a declaration that the Galveston County Beach Park Board of Trustees is a department of the county. He contended that if the Board is a county department, then (1) it must make purchases and pay claims using the county auditor and its purchasing agent, and (2) the Board's contract with the county, which currently allows the Board to avoid the county's purchasing scheme, is void. Declaring that the Board is a subdivision and department of Galveston County, the trial court enjoined the Board from making purchases or paying claims except through the county purchasing agent and auditor, and it ordered the Board to pay attorney's fees incurred by Lohec and by County Commissioner Wayne Johnson, III, who intervened in the suit. We reverse.

Galveston County voters authorized creation of the Beach Park Board on August 3, 1973 to finance and operate county beach parks, pursuant to an Act of the Legislature, Tex.Laws, 2nd Spec.Sess.1969, ch. 20, at 136–40, now found at Chapter 62 of the Texas Natural Resources Code. Beginning in 1974, the Board contracted with the county to make its own purchases, with claims for those purchases to be paid upon signature of the Board's chairman and whichever commissioner is sitting on the Board. The 1974 agreement was amended in 1978 to provide that, although purchases were not made by or through the county purchasing agent, Board claims would be subject to approval by the county auditor prior to payment. In December 1989, the Board began paying its claims without first

submitting them to the county auditor, and the auditor filed suit against the Board, the commissioners, and the county.

The different purchasing procedures employed by the Board since its creation merely reveal how Galveston officials have interpreted the Act at various times. As such, they are irrelevant to the issue before us, which is whether the Legislature intended to authorize creation of an autonomous body. In arriving at the Legislature's intent, we consider the history of the subject matter, the mischief to be remedied, and the purpose to be accomplished. *Burlington Northern R.R. Co. v. Harvey*, 717 S.W.2d 371, 375–76 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

■ A legislative committee charged with studying state coastal considerations explained the need for a new administrative entity to improve Texas beaches:

[C]ounty governments have virtually no powers which they can exercise to improve the beach (sic). Unlike home-rule cities, the counties of Texas are dependent upon precise Constitutional or statutory grants of power which are specific and limited in nature.

*Report of the Interim Beach Study Committee*, "Footprints on the Sands of Time," p. 19 (1969). Indeed, "[s]everal county officials told the Committee that they seriously doubted whether counties had the authority to clean the beaches." *Id.* To fill the void of local regulation of beaches, the Legislature gave beach park boards jurisdiction over all lands used as parks in connection with public beaches, excluding those located within city limits and those owned by the State, and all public beaches owned in fee by the county. Act, § 7, at 137; Code § 62.091(a). The Act empowered a beach park board to sue and be sued in its own name, Act, 7(j), at 138; Code § 62.054; issue revenue bonds, Act § 7(*l*), at 138–39; Code § 62.131; and hire employees, including financial personnel and a manager "subject only to the direction and orders of the board." Act § 7(i), at 138; Code §§ 62.047 and 62.049.

Contracts made by county park boards in place at the time the enabling statute was passed required approval by the commissioners' court to become effective. However, beach park boards were granted authority to contract with adjacent counties, beach park boards in adjacent counties, or beach park boards of any city in the same county. Act, § 7(*o*), at 139; Code § 62.-098. Having authorized them to contract with adjacent counties, the provision allowing them to contract with beach park boards in adjacent counties would be redundant if a beach park board is a county department. This is further proof that the Legislature did not intend a beach park board to simply be a subdivision of a county.

The Act also specifically empowered a board to keep its own records or to contract with its own county *to the exclusion of other entities* to keep and maintain the board's records. Act, § 6, at 137; Code § 62.051(a), (b). A board also may contract with persons, associations, and corporations. Act § 7(g), at 138; Code § 62.097. Therefore, a board may contract with its own county for other services, since a government or governmental subdivision is a "person." TEX.GOV'T.CODE ANN. § 311.-005(2) (Vernon 1988). Here, for example, the Board contracted to include its employees in Galveston County's personnel and pension systems.

It is hornbook law that a party cannot contract with or be bound to himself: "[a] contract requires, and there must always be, at least two parties to the contract." Am.Jur.2d, Contracts, § 15, at 352. Thus, a board's authority to contract with its own county, regarding its records or other services, is the single most convincing indication of the Legislature's intent to establish the park board as an entity separate from the county. Therefore, we hold that the court erred in concluding that the Board is a department of the county.

■ In its second point of error, the county challenges the trial court's conclusion that the Board must use Galveston County's purchasing agent and auditor. Appellees contend that, regardless of whether the Board is a subdivision of the county, the Board must follow the county

754

purchasing scheme because the county auditor has statutory control over purchases made with county funds. Each year, the commissioners' court allocates some $1.5 million of county funds to the Board's $1.8 million operating budget. However, the Act established the Board's separate ownership of its funds, referring to "money belonging to or under control of the board." Act, § 5, at 137; Code § 62.052. The Act also authorized a board to expend funds to improve, equip, and maintain lands within its jurisdiction. Act, § 7, at 137–39; Code §§ 62.093, 62.095, and 62.096. However, the Legislature did not require the Board to file a financial statement or annual budget with county commissioners, as it had mandated existing county park boards to do. Tex.Rev.Civ.Stat.Ann. arts. 6079e, § 16, and 6079c, § 17, now found at Tex.Local Gov't Code Ann. §§ 320.047(a), (c)(2), and 321.047(a), (c), respectively.

Differences between the authority of the Board and the powers and duties of county park boards in place at the time the Act was passed further illustrate the Legislature's intent to authorize the creation of a new, independent administrative entity to accomplish tasks that counties lacked the authority to perform. Previous boards were subject to the supervision of their commissioners' courts. Tex.Rev.Civ.Stat. Ann. art. 6079e, § 4, now at Tex.Local Gov't.Code Ann. § 320.050 (Vernon 1988). However, by design, the Legislature endowed beach park boards with extensive independent powers characteristic of an autonomous body without limiting their purchasing scheme to the county budget process.

■ In reversing the judgment of the trial court, we render judgment that the Board is an independent unit of state government, separate from Galveston County; as such, its contract with the county, which does not require the Board to use Galveston County's purchasing agent or auditor, is not void. The cause is remanded for a determination regarding attorney's fees in light of our opinion.

OPINION ON MOTIONS
FOR REHEARING

On motions for rehearing, appellees Phil Lohec, the Galveston County auditor, and Wayne Johnson, a Galveston County commissioner, contend they should not have been assessed costs and fees because they filed suit in their official capacities. Appellants contend, as they did in the trial court, that Johnson had no standing to intervene in an official capacity and no justiciable interest as an individual. Further, the Galveston County Beach Park Board of Trustees contends that Lohec and Johnson are liable for the board's attorneys' fees and court costs.

■ Lohec brought suit in his official capacity to seek a judicial declaration of his rights and duties as county auditor. Appellants never contended that Lohec was before the Court in any capacity other than as county auditor, nor that he lacked standing or the necessary justiciable interest to bring the suit. Costs and attorneys' fees may not be assessed against Lohec, individually, in a suit brought in his official capacity. *See Driscoll v. Harris County Comm'rs Court*, 688 S.W.2d 569, 583 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)

■ Johnson intervened in the lawsuit "individually ... as both a County Commissioner and a taxpayer." The beach park board moved to strike Johnson's intervention on "no standing" grounds. In response to the motion to strike, Johnson stated:

[I]t is Intervenor's fervent belief ... that he has a sworn duty to advocate his legal position ... and ... if he were not to intervene ... he would be derelict in his duty and subject ... to possible civil and/or criminal liability in the event [the trial court] should rule that the [beach park board] is a department of the County[.]

The trial court found that Johnson intervened as a commissioner, not as a taxpayer. However, we hold that Johnson had no standing to intervene in his official capacity. *Bee County v. Roberts*, 437 S.W.2d 62 (Tex.Civ.App.—Corpus Christi 1968, no

writ). Like the commissioners in *Bee County*, Johnson has no justiciable interest in the litigation apart from the county, through a majority of the commissioners' court. *Id.* at 64.

 Johnson also claimed to be intervening in an individual capacity as a taxpayer. Any party may intervene, subject to being stricken out by the Court for sufficient cause on the motion of the opposite party. Tex.R.Civ.P. 60. It is the intervenor's burden to show a justiciable interest in the lawsuit by proving that adjudication of contested issues will conclusively affect him. Further, "if the sole object of a suit is for the benefit of the public at large and no citizen would be affected differently from all other citizens by the result of the suit, an individual does not have a justiciable interest that confers standing to prosecute the suit." Dorsaneo, 2 *Texas Litigation Guide* § 45.02[2], p. 45–12 (1989); *see also Marshall v. City of Lubbock*, 520 S.W.2d 553, 554–55 (Tex.App.—Amarillo 1975, writ ref'd n.r.e.) In his capacity as a taxpayer, Johnson failed to establish an interest peculiar to him individually and not as a member of the general public. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984). Because Johnson had no standing to intervene either as a county commissioner or as a taxpayer, the trial court abused its discretion in refusing to strike Johnson's intervention.

 In a proceeding for declaratory judgment, the court may award costs and reasonable and necessary attorneys' fees as are equitable and just. Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1986). Certainly, it is an abuse of discretion to award attorneys' fees to a party not entitled to any relief. *Houston v. Harris County Outdoor Advertising Assoc.*, 732 S.W.2d 42, 56 (Tex.App.—Houston [14th Dist.] 1987, no writ). Since Lohec and Johnson were not entitled to declaratory relief, we reverse the ruling of the trial court ordering appellants to pay costs and attorneys' fees incurred by Lohec and Johnson. Further, the trial court found that the beach park board reasonably and necessarily incurred $20,675 in attorneys'

fees and that an additional $7,500 would be reasonable in the event of an appeal. However, we decline the beach park board's request to render judgment that Lohec and Johnson pay the board's attorneys' fees, or to remand the cause with instructions that the trial court so order. Although the amount of attorneys' fees is not in dispute, it remains within the trial court's discretion to award costs and attorneys' fees as are equitable and just. As previously noted, costs and attorneys' fees may not be assessed against Lohec; however, they *may* be assessed against Johnson. We reverse and remand to the trial court for a determination, in light of our opinion, as to whether costs and attorneys' fees incurred by the prevailing parties should be assessed against Johnson.